IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>SHAWN M. MAYFIELD,  )<br>  )<br>Defendant.  )<br>  ) | 8:10CR390<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the objections, filed by the government, Filing No. 31, to the magistrate judge's findings and recommendation ("F&R"), Filing No. 28 and Filing No. 30, granting the defendant's motion to delete surplusage from the indictment, Filing No. 19. Also, the defendant has filed an objection, Filing No. 32, to the findings and recommendation of the magistrate judge, denying his motion to suppress, Filing No. 16. Defendant is charged in the indictment with knowingly and intentionally possessing 5 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 844(a).

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a *de novo* determination of those portions of the F&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcript of the suppression hearing, Filing No. 30, and the exhibits submitted at the hearing. The court will adopt the F&R as to the surplusage in the indictment and will grant the defendant's motion to suppress.

## BACKGROUND

The facts are basically not in dispute.  An anonymous person called the police department from a phone booth.  He reported that two black men were asleep in a white four-door Impala, and these individuals had guns in their laps.  They car was on 30th and Fowler Streets.  At least five uniform officers in three marked cruisers went to this location. They located the automobile, found two black males asleep inside, found no firearms in plain sight, knocked on the window, and awakened the occupants of the vehicle.  After the occupants rolled down the windows, the officers asked the defendant and passenger to exit the car so that they could check the individuals and the vehicle for guns.  The occupants did so exit.  The officers then conducted a brief pat-down of both individuals. At that time one of the officers stepped into the open space next to the car door and saw the butt of a handgun on the floor.  Thereafter, a full pat-down ensued and the officers searched defendant's car.  The officers discovered another gun and also found crack cocaine on the body of the defendant and in the vehicle.

## DISCUSSION

*A.  Surplus language in the Indictment*

Defendant argues that, pursuant to the recent amendments to the crack cocaine quantities, such language should be deleted from the indictment.  The government disagreed, but the magistrate judge found in favor of the defendant.  The government objects to this finding. References in an indictment to sentence enhancement factors "are 'mere surplusage' and 'may be disregarded if the remaining allegations are sufficient to charge a crime.'" [United States v. Bates, 77 F.3d 1101, 1105 (8th Cir. 1996)](#) (quoting [United States v. Washington, 992 F.2d 785, 787 (8th Cir. 1993)](#).  Facts that alter the

maximum penalty function as traditional elements of a crime.  See *Harris v. United States*, 536 U.S. 545, 560-61 (2002); *United States v. Turner*, 603 F.3d 468, 471 (8th Cir. 2010) (drug quantity is an element of the offense when it increases the relevant maximum punishment).  The government has a constitutional obligation to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt.  *Harris*, 536 U.S. at 557; *see also Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000).

> This court has recently decided the same issue.  This court stated:
>
> Based upon the language and structure, legislative history, and motivating policies of the Fair Sentencing Act and the Sentencing Reform Act of 1984, the court finds Congress did not want federal judges to continue to impose harsher sentences after the enactment of the FSA merely because the criminal conduct occurred before the enactment.  Congress made clear the urgency of the change out of its concern for fairness.  It is a necessary or fair implication from the urgency reflected in the grant of emergency authority that Congress intended the FSA penalties and concomitant Guidelines base offense level adjustments to apply to pending cases.

*United States v. Holland*, 2011 WL 98313 * 11 (D. Neb. January 10, 2011); *see also United States v. Parks,* 2010 WL 5463743 (D. Neb. December 28, 2010).

The court finds that the situation in this case is controlled by the findings in *Holland* and *Parks*.  Accordingly, the court will adopt the F&R of the magistrate judge and grant defendant's motion to strike surplusage.

### B.  Motion to Suppress

After awakening the occupants of the car, the officers told defendant that they had a report that there were firearms located in the vehicle.  The officers then asked the defendant and his passenger to exit the vehicle. The officers thereafter conducted pat-downs and found nothing at that time.  However, one of the officers leaned in between the

door and the car and saw the butt of a gun underneath the seat. The officers searched the car and another handgun was found as well as crack cocaine. Defendant moved to suppress all evidence.

The magistrate judge recommends that this court deny the motion to suppress. The magistrate judge found this was a consensual encounter. In the alternative, the magistrate judge determined that there existed reasonable articulable suspicion of criminal activity to justify the search.

Defendant contends that this search is identical to the one in *Florida v. J.L.*, 529 U.S. 266 (2000), where an anonymous caller reported to the police that a young black male with a plaid shirt at a bus stop had a gun. Two officers arrived, saw three black males, and one had on a plaid shirt. The Supreme Court determined that an anonymous tip without some indicia of reliability and corroboration is insufficient to find a reasonable suspicion of criminal activity. *Id*. at 271. Defendant also relies on a recent Eighth Circuit finding that an officer who stopped and frisked the defendant lacked reasonable suspicion of criminal activity, even though the defendant was in a high crime area, wearing a hoodie on a mild day, and clutching his front pocket. *See United States v. Jones*, 606 F.3d 964, 968-69 (8th Cir. 2010). The court determined that there was no reasonable suspicion that *Jones* was engaged in criminal activity, other than carrying a weapon. *Id*. at 966.

The government argues that *Florida v. J.L.* is distinguishable. In the current case before this court, argues the government, the caller described the car, the occupants, indicated that the occupants were asleep, told where the car was located, and stated the occupants had guns in their laps. The government contends that the officer saw the

handgun as the two exited from the vehicle.  The search, argues the government, was one incident to arrest.

Under the Fourth Amendment, the people have a right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures by the government.  Fourth Amendment, United States Constitution; *United States v. Richards, 611 F.3d 966, 968 (8th Cir. 2010)*.  The court believes that the police have a right, upon seeing a car parked on a public street, to approach the vehicle and knock on the window. *Terry v. Ohio*, 392 U.S. 1 (1968).  The police have a right to ask questions as to the safety of the occupants and general questions about why they were sleeping in a car.  *Id*.

However, the court is very troubled by the next step taken by the officers.  In this case the officers asked the driver and passenger to get out of the car so they could pat down the occupants and search the car.  There is nothing consensual about that request, particularly given the fact that the car was surrounded and blocked off by other police vehicles and a number of police officers.  See *Florida v. Bostick*, 501 U.S. 429, 434 (1983) (if reasonable person feels as though he need not answer question put to him and may go his own way then no Fourth Amendment violation; Fourth Amendment invoked when it loses its consensual nature); *see also United States v. $231,930.00 in U.S. Currency*, 614 F.3d 837, 843 (8th Cir. 2010) (same).  The defendant clearly was not free to leave.  See *United States v. Mendenhall,* 446 U.S. 544, 553 (1980) (person is seized by show of authority and when freedom of movement is restrained).  The officers agreed that they positioned themselves to limit the movement of the defendant.  That combined with the number of officers and the directives of the officers is sufficient to constitute a seizure in this case.  See *United States v. Villa-Gonzalez*, 623 F.3d 526, 532 (8th Cir. 2010) (number

of officers, limiting movement of suspect, use of language indicating necessity of compliance, and physical touching all factors that might indicate the encounter is not consensual).

There was no gun in plain view when the officers first observed the sleeping suspects or when they initiated conversation with the occupants. It was not until after the police required that the occupants exit the vehicle that the officers saw the gun. The gun was only visible because of the open door which allowed the officers to peer in and see the bottom of the seat. There is no testimony of any kind that these occupants otherwise acted suspiciously. There is no testimony that these occupants attempted to put there hands or body in a position that would have created a fear of harm on the part of the officers. There is no evidence the occupants tried to escape. On the contrary, the two occupants appear to have been quite compliant with the directives given to them.

The court further finds the case at hand is not distinguishable from *Florida v. J.L.* The search and seizure were not justified by the anonymous tip. The officers had no objective, corroborating evidence that criminal activity was afoot. *See also United States v. McAtee,* 2000 WL 33361995 (S.D. Iowa 2000)*; United States v. Baker,* 2006 WL 1116433 (D. Minn. 2006); *United States v. Smith,* 2007 WL 4461034 (D. Minn. 2007) (suppression ordered in cases of anonymous tips). The court finds that the Fourth Amendment mandates suppression in this case.

THEREFORE, IT IS ORDERED:

1. The defendant's motion to suppress, Filing No. 16, is granted.

2. The defendant's motion to strike surplusage, Filing No. 19, is granted.

3. The objections of the defendant, Filing No. 32, are granted.

4. The government's objections, Filing No. 31, are overruled.

5. The findings and recommendation of the magistrate judge, Filing No. 28 and Filing No. 30, are adopted in part and rejected in part as set forth herein.

DATED this 1st day of February, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.